UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LORENZO WOOD,

                              Plaintiff,

                                                                    9:21-CV-0107
v.                                                                  (GTS/ML)

DANIELLE DILL; DEBORAH MCCULLOCH;
JEFFREY NOWICKI; ERICA SAXTON; GRACE
SAXE; PROVOW,

                              Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

LORENZO WOOD
  *Pro Se* Plaintiff
1302 Lower Broadway, Apt. D8
Schenectady, New York 12303

LETITIA A. JAMES                                STEVE NGUYEN, ESQ.
Attorney General for the State of New York      Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

### **REPORT-RECOMMENDATION**

        Currently before the Court, in this civil rights action filed by Lorenzo Wood ("Plaintiff")

against Danielle Dill, Deborah McCulloch, Jeffrey Nowicki, Erica Saxton, Grace Saxe, and

Provow (collectively "Defendants"), is Defendants' motion for summary judgement pursuant to

Fed. R. Civ. P. 56.  (Dkt. No. 31.)  For the reasons set forth below, I recommend that

Defendants' motion for summary judgement be granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

At this procedural posture, Plaintiff alleges medical indifference claims against Defendants pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment.  (Dkt. Nos. 1, 4.) More specifically, Plaintiff alleges that while confined at Central New York Psychiatric Center ("CNYPC") Defendants failed to provide him with sufficient medical care concerning his back and leg pain when they failed to provide him a mattress accommodation and a cushioned chair accommodation.  (Dkt. Nos. 1, 4.)

### B.    Defendants' Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff in his response.  (*Compare* Dkt. No. 31, Attach. 1 [Defs.' Statement of Material Facts], *with* Dkt. No. 39 [Pl.'s Resp.].)

1.    At all relevant times, Plaintiff was civilly confined to CNYPC.

2.    On January 29, 2021, Plaintiff commenced this action against CNYPC employees pursuant to 42 U.S.C. § 1983.

3.    After an initial review, the Court determined that Plaintiff's Fourteenth Amendment medical indifference claim survived against Defendants.

4.    Plaintiff alleges that Defendants were deliberately indifferent to his back and leg pain in 2019.

5.    In 2001, Plaintiff injured his back while unloading a construction truck.

6.    Some time later, Plaintiff had two herniated discs removed from his spine.  He also developed Multiple Sclerosis ("MS").

7.      From 2006 to 2012, Plaintiff was incarcerated with the New York State

Department of Corrections and Community Service ("DOCCS").

8.      From 2014 to 2020, Plaintiff was civilly confined at CNYPC.[1]

9.      As of February 2018, Plaintiff was prescribed four medications to treat his pain,

neuropathy, and MS condition.

10.      More specifically, Plaintiff received acetaminophen for his pain, Gabapentin for

his neuropathy, and Baclofen and Interferon Beta-1b for his MS.

11.      In 2019, Plaintiff's primary medical provider was Kristen Deep, Nurse

Practitioner ("NP").

12.      On March 20, 2019, NP Deep authorized Plaintiff's use of an egg crate mattress.

13.      In or around May 2, 2019, CNYPC prohibited the use of egg crate mattresses, due

to issues with infection control.

14.      Soon thereafter, Plaintiff's egg crate mattress was confiscated.

15.      On May 17, 2019, Defendant Dill received a complaint from Plaintiff regarding

the loss of his egg crate mattress.

16.      On May 17, 2019, Defendant Dill responded to Plaintiff's letter, and advised him

to consult with his medical team.

17.      On May 22, 2019, NP Deep medically examined Plaintiff, who complained of

"significant pain in [his] low[er] back, hips, and . . . legs."

---

[1]      Although Defendants' Statement of Material Facts states that Plaintiff was civilly
confined at CNYPC "[f]rom 2014 to 2021," Plaintiff testified that he was released from CNYPC
on September 22, 2020.  (Dkt. No. 31, Attach. 10 at 54.)  In addition, throughout Plaintiff's
deposition—which was conducted on January 13, 2021—Plaintiff and Defendants' counsel
referred to Plaintiff's confinement at CNYPC in the past tense.  (*Id*. at 17.)

18.     To help alleviate Plaintiff's pain, NP Deep wrote a new prescription for ibuprofen.

19.     In addition, NP Deep referred Plaintiff to see a neurologist.

20.     Further, NP Deep explained to Plaintiff that egg crate mattresses were no longer permitted due to "infection control issues."

21.     In June 2019, Defendant McCulloch received a complaint from Plaintiff regarding his egg crate mattress.

22.     On June 21, 2019, Defendant McCulloch responded to Plaintiff's letter, advising Plaintiff to work with medical staff to manage his pain.

23.     On June 25, 2019, NP Deep prescribed Plaintiff a menthol cream for additional pain relief.

24.     On July 9, 2019, Defendant Saxton received a complaint from Plaintiff about the chairs available during group classes.

25.     On July 10, 2019, Defendant Saxton responded to Plaintiff's complaint and advised Plaintiff to seek an accommodation from the medical staff.

26.     On July 16, 2019, NP Deep authorized Plaintiff's use of a lumbar support pillow during group classes.

27.     On July 18, 2019, Defendant Saxton received another complaint from Plaintiff stating that the lumbar support pillow had inadequate support.

28.     On July 19, 2019, Defendant Saxton responded to Plaintiff's complaint and advised Plaintiff to relay his concerns to the medical staff.

29.     On July 25, 2019, Plaintiff was examined by a consulting neurologist.

30.     The consulting neurologist observed no objective worsening of Plaintiff's conditions.

31.     According to the consulting neurologist's recommendation, NP Deep ordered a MRI screening of Plaintiff's brain, cervical spine, and thoracic spine.

32.     During the months of July and August 2019, Plaintiff skipped several of his group classes, opted not to use his lumbar support pillow, and acted with hostility towards facilitators.

33.     On August 20, 2019, Defendants Saxe and Saxton met with Plaintiff to discuss his disruptive behavior.  During that meeting, Defendant Saxe advised Plaintiff to utilize his accommodation.

34.     On August 30, 2019, a MRI of Plaintiff's brain, cervical spine, and thoracic spine was scheduled.

35.     As of September 30, 2019, Plaintiff was prescribed six medications to treat his pain, neuropathy, and MS condition.  Two of those six prescriptions—the ibuprofen and menthol cream—were ordered in May and June 2019, after Plaintiff complained of increased pain.

36.     On October 1, 2019, Plaintiff was examined medically and was advised to continue with his current medication.

37.     At no point in time did Defendants Saxe, Saxton, Dill, McCulloch, or Nowicki have authority to render medical determinations or issue treatment for medical ailments.

38.     At no point in time did Defendants Saxe, Saxton, Dill, McCulloch, or Nowicki impede or delay Plaintiff's access to medical services.[2]

---

[2]     The Court notes that this asserted statement of material fact with respect to Defendant Dill is supported at Dkt. No. 31, Attach. 5 at ¶ 17.  (Dkt. No. 31, Attach. 1 [citing *inter alia* Dkt. No. 31, Attach. 5 at ¶ 18].)

39.     At no point in time did Defendant Nowicki speak to Plaintiff about his medical conditions.

40.     In addition, at no point in time did Defendant Nowicki respond to Plaintiff about his medical conditions.

### C.     Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.     Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert that Plaintiff's medical indifference claims fail as a matter of law because (1) there is no dispute of material fact that Plaintiff received adequate medical treatment, (2) there is no dispute of material fact that Defendant Nowicki was not personally involved in any alleged constitutional violation, and (3) in the alternative, there is no dispute of material fact that the actions of Defendants Provov, Saxe, Saxton, Dill, and McCulloch were objectively reasonable.  (Dkt. No. 31, Attach. 2.)  More specifically, with respect to their first argument, Defendants aver that Plaintiff cannot show that Defendants were deliberately indifferent to his medical needs because (a) Plaintiff was provided timely, adequate, and appropriate medical care by NP Deep and Defendant Provov, and (b) non-medical providers Defendants Saxe, Saxton, Dill, and McCulloch were entitled to rely on the opinions of medical staff.  (*Id.*)  With respect to their third argument, Defendants assert that, in the alternative, Defendants Provov, Saxe, Saxton, Dill, and McCulloch are shielded from liability pursuant to the doctrine of qualified immunity because their actions were objectively reasonable and "it was objectively reasonable for [Defendant] Provov to defer to her colleague's medical judgment and assigned treatment."  (*Id.*)

2.      **Plaintiff's Opposition**

Generally, in opposition to Defendants' motion, Plaintiff argues that Defendants were deliberately indifferent to his back and leg pain and conditions associated with his MS.  (Dkt. No. 39.)  Plaintiff argues that he told NP Deep and Defendants Provow, Dill, and McCulloch, and others about the pain he experienced as a result of the non-cushioned chairs provided for group classes.  (*Id*.)  Plaintiff argues that he wrote to Defendant Nowicki and "kept writing to everyone 'begging, pleading, crying for help.'"  (*Id*.)  Plaintiff argues that "they were always referring to medication for pain instead of finding out the cause."  (*Id*.)  Plaintiff argues that the lumbar support pillow that NP Deep prescribed him did not help his condition and instead, made it worse.  (*Id*.)  Plaintiff argues that during his meeting with Defendant Saxe, she laughed and asked him how his lower back was because he was sitting in a cushioned chair.  (*Id*.)  Plaintiff argues that he is permanently disabled now in part, because of the actions of Defendants.  (*Id*.) Plaintiff then sets forth the New York State patients' bill of rights in a hospital and the Hippocratic oath.  (*Id*.)

## II.      RELEVANT LEGAL STANDARDS

### A.      Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3]  As for the materiality requirement, a dispute of fact is

---

[3]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[4] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[5] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[6]

---

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[4]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[5]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[6]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[7]–even when the non-movant was proceeding *pro se*.[8]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[9] Stated another way, when a non-movant fails to oppose a legal argument

---

[7]    Among other things, Local Rule 56.1 (previously Local Rule 7.1[a][3]) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

[8]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[9]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1[b][3]); *Devito v.*

asserted by a movant, the movant may succeed on the argument by showing that the argument

possesses facial merit, which has appropriately been characterized as a "modest" burden. *See*

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested therein

. . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.     Legal Standard Governing Claims Pursuant to 42 U.S.C. § 1983**

To state a claim under Section 1983, a plaintiff must allege facts showing defendants'

direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y.S.*

*Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that

personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983.").

A defendant may not be held liable under Section 1983 solely because that defendant

employs or supervises a person who violated the plaintiff's rights. *See Tangreti v. Bachmann*,

983 F.3d 609, 619-20 (2d Cir. 2020).

**C.     Legal Standard Governing a Medical Indifference Claim Under the
Fourteenth Amendment**

To state a claim for deliberate indifference to serious medical needs under the Due

Process Clause, a plaintiff must satisfy a two-pronged test. First, "the alleged deprivation of

adequate medical care must be 'sufficiently serious.'" *Lloyd v. City of New York*, 246 F. Supp.

---

*Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004)
(McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude
expert testimony as "a concession by plaintiff that the court should exclude [the expert's]
testimony" on that ground).

3d 704, 717 (S.D.N.Y. 2017) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs*., 719 F.3d 127,

139 (2d Cir. 2013)).  Second, the defendant must act with a "sufficiently culpable state of mind."

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

      To determine whether inadequate care is "sufficiently serious," a court must "examine

how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or

will likely cause the prisoner."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  "Where

a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any

treatment—the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the

challenged deprivation of care, rather than the severity of the prisoner's underlying medical

condition, considered in the abstract.'"  *Revels v. Corr. Med. Care, Inc*., 17-CV-0088, 2018 WL

1578157, at \*4 (N.D.N.Y. Mar. 28, 2018) (D'Agostino, J.) (quoting *Smith v. Carpenter*, 316 F.3d

178, 186 (2d Cir. 2003)); *see also Ray v. Zamilus*, 13-CV-2201, 2017 WL 4329722, \*8

(S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment,

rather than a complete lack of treatment, the objective element must be satisfied by harm that

resulted from the delay").

      With regard to the mens rea prong, in light of the Supreme Court's ruling in *Kingsley v.*

*Hendrickson*, 135 S. Ct. 2466 (2015), deliberate indifference must be assessed objectively.  *See*

*Durham v. Jones*, 17-CV-0434, 2019 WL 1103284, at \*4-5 (N.D.N.Y. Jan. 23, 2019) (Stewart,

M.J.); *Lloyd*, 246 F. Supp. 3d at 719.  Thus, "rather than ask whether the charged official 'kn[ew]

of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine

whether the official 'knew, or should have known' that his or her conduct 'posed an excessive

risk to health or safety.'"  *Lloyd*, 246 F. Supp. 3d at 719 (quoting *Darnell v. Pineiro*, 849 F.3d

17, 33, 35 (2d Cir. 2017)).

### III.    ANALYSIS

After carefully considering the matter, I recommend that the Court grant Defendants'

motion for summary judgment in part and deny it in part.

### A.    Plaintiff's Claim Against Defendant Provow

The Second Circuit has held that the condition of a detainee's or inmate's mattress "may

be so inadequate as to constitute an unconstitutional deprivation." *Rodriguez v. City of N.Y.*, 15-

CV-7945, 2018 WL 1276826, at *4 (S.D.N.Y. Mar. 9, 2018) (quoting *Walker v. Schult*, 717 F.3d

119, 127 (2d Cir. 2013)).  To state a claim based on inadequate bedding, a plaintiff must plead

"(1) he had a medical condition requiring a non-standard bed to protect against serious damage

to his future health; (2) he made his condition known to the prison officials; (3) he requested a

non-standard bed to accommodate the condition; and (4) his request was denied by an official

who knew of and disregarded an excessive risk to the plaintiff's health or safety." *Rodriguez*,

2018 WL 1276826, at *4 (citing *Santiago v. Comm'r of New York City Corr. Joseph Ponte*, 14-

CV-6473, 2016 WL 680823, at *2 (S.D.N.Y. Feb. 18, 2016)).  The same standard has been

applied when inmates or detainees have sought special chairs to accommodate medical

conditions.  *See Roundtree v. New York City*, 15-CV-8198, 2021 WL 404471, at *6 (S.D.N.Y.

Sept. 30, 2021) (applying the mattress accommodation standard to an inmate plaintiff who

brought deliberate indifference claims based on mattress and chair accommodation denials).

### 1.    Mattress Accommodation

With respect to the first factor, Plaintiff had a medical condition, for which, he required a

non-standard bed, as evidenced by the fact that he was prescribed an egg crate mattress by NP

Deep on March 20, 2019.  (Dkt. No. 31, Attach. 3 at ¶ 11.)  Moreover, Plaintiff testified that on

April 30, 2019, Dr. Bot, an outside orthopedic specialist, who medically examined Plaintiff once

per month during his time at CNYPC, prescribed Plaintiff a six-inch egg crate mattress—which was approximately double the thickness of the egg crate mattress prescribed by NP Deep—to assist with Plaintiff's medical condition.  (Dkt. No. 31, Attach. 10 at 74-77.)

In addition, Plaintiff testified that the egg crate mattress when provided, alleviated his pain, which suggests that this item effectively helped manage his medical condition.  (Dkt. No. 31, Attach. 10 at 70.)  Moreover, it is undisputed that Plaintiff was prescribed pain medication, which further evinces the seriousness of his condition.  *See Ruiz v. City of New York*, 16-CV-6073, 16-CV-6074, 2018 WL 3966295, at *3 (E.D.N.Y. Aug. 17, 2018) (citing *White v. Schriro*, 16-CV-6769, 2017 WL 3268202, at *4 (S.D.N.Y. July 31, 2017) (finding that the plaintiff's pain medication prescriptions satisfied the objective test for a Rikers Island mattress claim)) (finding that the plaintiff satisfied the objective prong where he had a medical condition for which he required a non-standard bed and was prescribed a double mattress by a prison physician assistant).

With respect to the second and third factors, the record indicates that Plaintiff complained to Defendant Provow about the removal of his egg crate mattress, and made a reasonable request for an accommodation, thereby making his condition known to prison officials including Defendant Provow.  (Dkt. No. 31, Attach. 3 at 7; Dkt. No. 31, Attach. 10 at 68-69, 71, 108.)

With respect to the fourth factor, there is no evidence before the Court that Defendant Provow (or any other medical provider at CNYPC) conducted an independent medical assessment in May 2019 that resulted in a decision to change Plaintiff's prescription for an egg crate mattress.  Instead, it appears that Plaintiff's egg crate mattress was confiscated based solely on CNYPC's policy change.  (Dkt. No. 31, Attach. 3 at ¶¶ 13-17); *see Sherman v. Cook*, 20-CV-1485, 2021 WL 311283, at *7 (D. Conn. Jan. 29, 2021) (quoting *Ruiz*, 2018 WL 3966295, at *4;

13

*see also Walker v. Cnty. of Nassau*, 15-CV-4794, 2016 WL 5338546, at *2 (E.D.N.Y. Sept. 22, 2016) ("If the additional or different pain medication was necessary, but defendants . . . refused to prescribe it solely based upon [correctional facility] policy, such refusal supports an inference of deliberate indifference")) ("Courts have held that refusal to prescribe an accommodation based 'solely on DOC policy and not on independent medical judgment' may constitute deliberate indifference to serious medical needs.").

Although Defendant Provow's declaration states that her "services were limited to prescribing [Plaintiff's] medication," (Dkt. No. 31, Attach. 4 at ¶ 5), construing all reasonable inferences in favor of Plaintiff, it is reasonable to infer that Defendant Provow—as a licensed physician—served in a supervisory role of NP Deep's care of Plaintiff.  This inference is more persuasive, in light of the fact that there is an overlap in Plaintiff's medical care provided by NP Deep and Defendant Provow addressing Plaintiff's pain.  For example, Defendant Provow testified that she prescribed Plaintiff acetaminophen for pain.  (Dkt. No. 31, Attach. 4 at ¶ 13.) Moreover, NP Deep testified that she prescribed Plaintiff ibuprofen and menthol cream for pain. (Dkt. No. 31, Attach. 3 at ¶¶ 16, 22.)

It is also unclear at this juncture whether medical devices or prescribed accommodations would fall under the purview of "medication," which Defendant Provow has testified that she was responsible for.

Defendant Provow also attested that she was not "involved with the confiscation of [Plaintiff]'s egg crate mattress."  (*Id*. at ¶ 15.)  However, there is no evidence before the Court regarding what, if any, involvement Defendant Provow had in the denial of a mattress accommodation for Plaintiff after his egg crate mattress was confiscated.  (Dkt. No. 31, Attach. 10 at 69 [Plaintiff's deposition testimony that he wrote to Defendant Provow after his mattress

was confiscated]; Dkt. No. 31, Attach. 10 at 108 [Plaintiff's deposition testimony that he made a request for a reasonable accommodation of the mattress].)  Thus, there remain material issues of fact for trial regarding Defendant Provow's involvement in the decision to deny Plaintiff a mattress accommodation.

As a result, I recommend that the Court deny Defendants' motion for summary judgment with respect to Plaintiff's medical indifference claim against Defendant Provow based on Plaintiff's mattress accommodation requests.

### 2.    Cushioned Chair Accommodation

However, I reach a different conclusion with respect to Plaintiff's medical indifference claim against Defendant Provow based on Plaintiff's allegations regarding the cushioned chairs available during group classes.

With respect to the first factor, there is no evidence in the record indicating that Plaintiff had a medical condition, for which, he was prescribed a cushioned chair accommodation, which weighs against a finding that he satisfied the objective prong.  Further, although Plaintiff was prescribed additional pain medications after his egg crate mattress was confiscated, those additional medications were prescribed before Plaintiff complained about the removal of the cushioned chairs from the group classes and thus, were not prescribed in response to any additional symptoms that Plaintiff presented from the change in chairs.  (Dkt. No. 31, Attach. 3 at ¶¶ 15-16, 22, 23.)

Further, with respect to the fourth factor, Plaintiff did not have a cushioned chair accommodation that was later revoked pursuant to an institution-wide policy.  Instead, CNYPC provided different chairs for group programs, which Plaintiff found less comfortable.  When Plaintiff brought his complaints to NP Deep, she ordered his use of a pillow during group

classes. (Dkt. No. 31, Attach. 3 at ¶¶ 23-25.) Although Plaintiff was unsatisfied with the treatment prescribed, "mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Moreover, Plaintiff's medical team's "efforts to treat Plaintiff's symptoms work against finding the necessary mental state." *Ifill v. Weinstock*, 06-CV-312S, 2012 WL 162405, at *4 (W.D.N.Y. Jan. 19, 2012).

As a result, I recommend that the Court grant Defendants' motion for summary judgment with respect to Plaintiff's medical indifference claim against Defendant Provow based on Plaintiff's cushioned chair accommodation requests.

**B.    Plaintiff's Claims Against Defendants Saxe, Saxton, Dill, and McCulloch**

For the reasons set forth in Defendants' memorandum of law (Dkt. No. 31, Attach. 2 at 8-9) I recommend that Plaintiff's claims against Defendants Saxe, Saxton, Dill, and McCulloch be dismissed because there is no genuine dispute as to any material fact that they, as non-medical professionals, were entitled to rely on the opinions of medical staff concerning the proper course of treatment. *See Nix v. Lester*, 16-CV-0828, 2017 WL 3610576, at *8 (N.D.N.Y. Aug. 4, 2017) (Dancks, M.J.) (citing *Rosario v. Anson*, 12-CV-1506, 2015 WL 5692550, at *12 (N.D.N.Y. Sept. 28, 2015) (Sannes, J.) (corrections officials are entitled to rely on the opinions of medical staff concerning the proper course of treatment)) (recommending dismissal of the plaintiff's medical indifference claim against the corrections officer defendants—as non-medical professionals—because they were entitled to rely on the opinion of medical staff), *report and recommendation adopted by* 2017 WL 3601239 (N.D.N.Y. Aug. 21, 2017) (Scullin, J.); *see also Borges v. Schenectady Cnty.*, 20-CV-0245, 2020 WL 5369808, at *7 (N.D.N.Y. Sept. 8, 2020) (Kahn, J.) (collecting cases) (dismissing the plaintiff's medical indifference claims against the

corrections officer sergeant defendant because there was no indication "that he, as a non-medical professional, had any way of knowing that the medical treatment Plaintiff received . . . would not improve Plaintiff's condition such that his alleged decision to follow, rather than oppose, [the physician doctor]'s directive to return Plaintiff to his cell amounted to objective deliberate indifference."); *Frank v. Dep't of Corr. and Cmty. Supervision*, 18-CV-1047, 2019 WL 1100109, at *4 (N.D.N.Y. Mar. 8, 2019) (Suddaby, C.J.) (dismissing the plaintiff's medical indifference claims against the defendant corrections officers where the complaint failed to allege facts plausibly suggesting that "either of these defendants had any medical training, or reason to question the medical judgment of [the nurse] and her treatment of plaintiff.").

C.    **Plaintiff's Claim Against Defendant Nowicki**

For the reasons set forth in Defendants' memorandum of law (Dkt. No. 31, Attach. 2 at 10-11), I recommend that Plaintiff's claims against Defendant Nowicki be dismissed because there is no genuine dispute of material fact that Defendant Nowicki was not personally involved in any alleged constitutional deprivation.  To those reasons, the Court adds the following one point.

Plaintiff testified that he met with Defendant Nowicki one time but cannot recall whether the meeting pertained to Plaintiff's complaints about the egg crate mattress or an incident that Plaintiff had with another resident of CNYPC.  (Dkt. No. 31, Attach. 10 at 128-29.)  However, "vague denials and memory lapses . . . do not create genuine issues of material fact" for purposes of summary judgment.  *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000).

In support of Defendants' motion, Defendant Nowicki submitted a declaration under penalty of perjury stating that he did not correspond with Plaintiff regarding Plaintiff's medical

17

conditions.  (Dkt. No. 31, Attach. 9 at ¶¶ 10-12.)  Further, this Court has held that the failure to remedy unconstitutional conduct by others is insufficient to constitute personal involvement following the Second Circuit's decision in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). *Peck v. Cnty. of Onondaga, N.Y.*, 21-CV-0651, 2021 WL 3710546, at *10 (N.D.N.Y. Aug. 20, 2021) (Hurd, J.).

Thus, Plaintiff has failed to present evidence creating a genuine dispute of material fact regarding whether Defendant Nowicki was involved in any constitutional deprivation.  As a result, I recommend that the Court grant Defendants' motion for summary judgment with respect to Defendant Nowicki.[10]

### D.    Qualified Immunity

Defendants seek dismissal of Plaintiff's medical indifference claims against Defendants Provow, Saxe, Saxton, Dill, and McCulloch in the alternative based on the doctrine of qualified immunity.  In the event the above recommendations are adopted, the only remaining Defendant for consideration of this argument is Defendant Provow.  For that reason, I have limited my analysis regarding qualified immunity to that individual.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  In other words, "[an] officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or

---

[10]    In the alternative, I recommend that the Court grant Defendants' motion for summary judgment with respect to Plaintiff's claims against Defendant Nowicki for the reasons set forth in Part III.B. of this Order and Report-Recommendation, because Defendant Nowicki did not have authority to render medical determinations or issue treatment for medical conditions.  (Dkt. No. 31, Attach. 9 at ¶ 5.)

(2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly

established right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008). When determining

whether the right at issue is clearly established such that "the contours of the right are

sufficiently clear that a reasonable official would understand that what he is doing violates that

right," a court should ask "(1) Was the law defined with reasonable clarity? (2) Had the Supreme

Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have

understood from the existing law that the conduct was unlawful?" *Gonzalez v. City of

Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635,

640 (1987); *Young v. City of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)) (internal alterations and

quotation marks omitted).

With regard to the second question, the Second Circuit has explained that, to determine

whether a right is clearly established, "we generally look to Supreme Court and Second Circuit

precedent existing at the time of the alleged violation." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir.

2015) (internal quotation marks omitted) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police

Dep't*, 577 F.3d 415, 433 (2d Cir. 2009)).

With regard to the first question, the Supreme Court has repeatedly admonished lower

courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*,

563 U.S. 731, 742 (2011). "[A] case directly on point" is not necessarily required, "but existing

precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563

U.S. at 741.

Based on the analysis set forth in Part III.A.1. of this Order and Report-Recommendation,

I have found that issues of fact exist regarding Defendant Provow's knowledge, if any, of

Plaintiff's egg crate mattress prescription by NP Deep, the confiscation of his egg crate mattress

pursuant to CNYPC's new policy, and Plaintiff's alleged worsened medical condition after the removal of his egg crate mattress. In addition, it is unclear what, if any, knowledge Defendant Provow had regarding Dr. Bott's alleged prescription of a six-inch egg crate mattress for Plaintiff on April 30, 2019.

Thus, disputed issues of fact are present regarding whether it was objectively reasonable for Defendant Provow to believe that—after becoming aware of Plaintiff's alleged worsened medical condition after removal of the egg crate mattress—her conduct in making no efforts (other than allegedly "defer[ring]" to NP Deep) to determine whether Plaintiff should be provided a mattress accommodation exception to CNYPC's new egg crate policy, was lawful. Because facts remain in dispute as to the reasonableness of Defendant Provow's belief that her conduct did not constitute deliberate indifference to Plaintiff's safety or health, I cannot conclude that she is entitled to qualified immunity as a matter of law. *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (When "there are facts in dispute that are material to a determination of reasonableness," summary judgment on the basis of qualified immunity is inappropriate); *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (holding that matter of officers' qualified immunity could not be resolved as a matter of law because determination of whether it was reasonable for officers to believe their actions met established legal principles depended on disputed versions of facts); *Bell v. Luna*, 10-CV-0008, 2013 WL 12399553, at *6 (D. Conn. July 11, 2013) (denying the defendant's motion for summary judgment on qualified immunity grounds where disputed issues of fact were present regarding whether the defendant's conduct was objectively reasonable).

As a result, I recommend that Defendants' motion for summary judgment with respect to Defendant Provow on the ground of qualified immunity be denied.

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Defendants' motion for summary judgement (Dkt. No. 31) be

**GRANTED** to the extent that (1) Plaintiff's claims against Defendants Dill, McCulloch,

Nowicki, Saxton, and Saxe be dismissed in their entirety, and (2) Plaintiff's medical indifference

claim against Defendant Provow regarding a cushioned chair accommodation be dismissed; and

**DENIED** to the extent that Plaintiff's medical indifference claim against Defendant Provow

regarding a mattress accommodation survive; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and

Recommendation on the docket of this case and serve a copy upon the parties in accordance with

the local rules.[11]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14)

days within which to file written objections to the foregoing report.[12]  Such objections shall be

filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984

F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 29, 2022
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[11]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[12]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).